IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILEY A. PERDUE,<br><br>    Plaintiff,<br><br>v.<br><br>MOREHOUSE COLLEGE, INC.<br>d/b/a MOREHOUSE COLLEGE<br>and the BOARD OF TRUSTEES<br>OF MOREHOUSE COLLEGE,<br><br>    Defendants. | Civil Action<br><br>No. 1:15-cv-00380-MHC |

## DEFENDANTS' BRIEF IN SUPPORT OF SECOND MOTION TO DISMISS

Defendants Morehouse College, Inc. ("Morehouse") and the Board of Trustees of Morehouse College (the "Board") (collectively, "Defendants"), move to dismiss all claims asserted by Plaintiff, Wiley A. Perdue ("Dr. Perdue"), in his Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as follows:

### INTRODUCTION

Dr. Perdue, who served as acting president of Morehouse for less than one year in 1994 and 1995 and has received in excess of $1.1 million in retirement benefits from Morehouse since then, asserts claims that are unsupportable as a matter of law. At the heart of each claim is Morehouse's decision to cease paying

Dr. Perdue deferred compensation benefits after the end of 2014.  Morehouse, however, was permitted to cease providing these benefits to Dr. Perdue in accordance with the unambiguous terms of the retirement benefits plan that Dr. Perdue agreed to in 1997 (the "1997 Benefits Plan").[1]

The 1997 Benefits Plan is a "top hat"[2] benefits plan, and Dr. Perdue's claims arising from that agreement are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.[3]  All of Dr. Perdue's claims fail under ERISA.  First, Dr. Perdue's claims for monetary relief arising from the Board's decision for Morehouse to cease providing the deferred compensation benefits and insurance benefits fail because Defendants' actions

---

[1]    The 1997 Benefits Plan is attached to Defendants' Second Motion to Dismiss as Exhibit A.  The Court may consider the 1997 Benefits Plan without converting the motion to dismiss into a motion for summary judgment because Dr. Perdue refers to it in his Amended Complaint (*see, e.g.* Am. Compl. ¶¶ 20-21 (described therein as the "1997 Term Sheet")), and it is "integral to the claims presented." *Curtis Inv. Co. v. Bayerische Hypo-und Vereinsbank*, *AG*, 341 Fed. Appx. 487, 492 n.2 (11th Cir. Aug. 5, 2009) (district court properly considered credit agreement that was not attached to complaint because plaintiff referred to document in complaint and it was "integral to the claims presented"); *see also Brooks v. Blue Cross Blue Shield of Fla., Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997) (court can consider documents referred to in the complaint for purposes of a Rule 12(b)(6) dismissal without converting the motion to dismiss into a motion for summary judgment).

[2]    As explained in Section B., below, a "top hat" plan is a plan maintained primarily for the purpose of providing deferred compensation for a select group of management.

[3]    Dr. Perdue concedes that the 1997 Benefits Plan is an ERISA plan.  Am. Compl. ¶ 41.

US2008 6461955 1

were expressly permitted under the unambiguous terms of the 1997 Benefits Plan. As Dr. Perdue acknowledges in his Amended Complaint, the 1997 Benefits Plan contained an "annual review provision" that gave Morehouse the right to consider each year whether to continue Dr. Perdue's retirement benefits.  In August 2014, the Board acted in accordance with the annual review provision and decided not to continue Dr. Perdue's retirement benefits after December 2014.  Thus, Dr. Perdue could not prevail on his theories of anticipatory repudiation or breach of contract claims because the Board's actions were permitted by the 1997 Benefits Plan.

Dr. Perdue apparently seeks to overcome this fatal deficiency by alleging that oral promises by the then-current Chairman of the Board modified the 1997 Benefits Plan.  Dr. Perdue's attempt to circumvent the clear terms of the 1997 Benefits Plan is unavailing because it is well established that oral promises cannot be considered when interpreting unambiguous terms of a benefits plan covered by ERISA, especially where that plan contains an integration clause.

Second, because the 1997 Benefits Plan is a top hat plan, Dr. Perdue's claim for breach of fiduciary duty also fails.  It is well-established under ERISA law that no fiduciary duty arises from a top hat plan.  To the extent Dr. Perdue asserts his claim as being a "state law" claim, it fails both because it is preempted by ERISA

US2008 6461955 1

and because the basis of his claim arose in 1996 and 1997 and the claim is therefore barred by the statute of limitations.

Finally, Dr. Perdue's count for equitable relief fails for similar reasons. ERISA permits claims for equitable relief only in narrow circumstances not present here.  Dr. Perdue is seeking to enforce, through the equitable remedies of reformation or estoppel, purported terms of the benefits plan that were allegedly made through oral representations to him.  Those terms, however, cannot under any reading of applicable law, be considered part of the 1997 Benefits Plan, and therefore Dr. Perdue's claims for equitable relief are without support.

In summary, Dr. Perdue's claims fail because under ERISA these claims are barred by the unambiguous terms of the 1997 Benefits Plan.  For this reason, Dr. Perdue's Amended Complaint should be dismissed in its entirety.

## BACKGROUND FACTS[4]

Morehouse is a private, non-profit, liberal arts college located in Atlanta. Am. Compl. ¶ 2.  Dr. Perdue, a graduate of Morehouse and a former staff member,

---

[4]    Although Defendants deny allegations in the Amended Complaint and deny that they are liable for Dr. Perdue's claims, they accept the well-pleaded allegations in the Amended Complaint as being true solely for the purposes of this motion to dismiss.  *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true . . . .").  Defendants reserve the right to dispute those allegations at the appropriate time, if necessary.

served as Morehouse's Acting President for the short period of October 1994 to August 1995. *Id.* ¶¶ 6, 9-11. The incoming President, Dr. Walter Massey, did not select Dr. Perdue to be a member of his staff, but Dr. Perdue was instead provided with a generous early retirement offer. *Id.* ¶¶ 13-14. Dr. Perdue accepted the early retirement offer and retired from Morehouse in June 1996. *Id.* ¶ 15.

Dr. Perdue's retirement benefits were set forth generally in a July 1996 letter from the then-chairman of the Board of Trustees (the "1996 Retirement Letter"). Am. Compl. ¶ 16. Shortly thereafter, Morehouse notified Dr. Perdue that it would report taxable income of approximately one million dollars to the IRS for tax year 1996 for the future value of his retirement package. *Id.* ¶ 18. Dr. Perdue would not have been able to pay the tax bill that would have resulted from Morehouse's reporting to the IRS, so he and Morehouse entered into a formal retirement benefits plan through a document referred to by Dr. Perdue as the "1997 Term Sheet" and herein as the "1997 Benefits Plan." *Id.* ¶¶ 19-20.

The 1997 Benefits Plan contained several provisions regarding Dr. Perdue's retirement benefits plan. Am. Compl. ¶¶ 21, 28. Primarily, pursuant to the 1997 Benefits Plan, Dr. Perdue was to receive a monthly deferred compensation benefit so long as the Board did not elect to stop paying this deferred compensation benefit to

US2008 6461955 1

Dr. Perdue.  *Id.* ¶ 21.  Indeed, the 1997 Benefits Plan clearly and specifically sets

forth that:

> Morehouse College's Board of Trustees as of January 1,
> 1998 and as of the first day of each calendar year
> thereafter shall decide (1) whether to continue to pay Dr.
> Perdue a monthly deferred compensation benefit for the
> remainder of each such calendar year or through the
> month in such calendar year in which Dr. Perdue dies,
> whichever comes first . . . and (2) the amount, if any, of
> such monthly deferred compensation benefit for such
> calendar year.

Am. Compl. ¶ 21 (the "annual review provision").  The 1997 Benefits Plan also

provided that Morehouse would "purchase a life insurance policy on Dr. Perdue's

life for the benefit of Dr. Perdue's beneficiary, and the total amount payable in

1997 at Dr. Perdue's death to his beneficiary under such policy shall equal

$465,000."  Am. Compl. ¶ 28.  Similar to the annual review provision applicable to

the monthly deferred compensation, the 1997 Benefits Plan also contained an

annual review provision that allowed Morehouse to stop paying for the life

insurance policy.  *See* Ex. A ¶ 5 (containing the annual review provision applicable

to Dr. Perdue's life insurance benefits).

Morehouse upheld the terms of the 1997 Benefits Plan and paid Dr. Perdue

his monthly retirement benefit through 2014 (which equaled $68,754.00 per year).

Am. Compl. ¶ 30-31.  Morehouse also purchased the insurance policy required by

- 6 -

the 1997 Benefits Plan.  *Id.* ¶ 29.  In August 2014, however, the Board informed

Dr. Perdue, pursuant to the annual review provision, that Morehouse would cease

paying him the monthly retirement benefit at the end of December 2014.  *Id.* ¶ 31.

At the time he entered into the 1997 Benefits Plan, Dr. Perdue recognized

that the annual review provision "would give the Board of Trustees discretion to

terminate his benefits at a future date."  Am. Compl. ¶ 23.  Dr. Perdue alleges,

however, that he only agreed to the annual review provision *after* he was told over

the telephone by the then-current Chairman of the Board of Trustees that the

annual review provision was for tax purposes and would not be used to stop his

retirement benefits.  *Id.* ¶¶ 24, 26.

After Morehouse informed Dr. Perdue in August 2014 that it would not

continue his retirement benefit after December 2014, Dr. Perdue filed his

Complaint in this matter.[5]  All of Dr. Perdue's claims arise from an ERISA benefits

plan.  Am. Comp. ¶ 41.  Count One of the Amended Complaint asserts a claim for

monetary relief arising from claims of anticipatory repudiation and breach of

contract on the basis that Morehouse announced it would cease paying Dr. Perdue

---

[5]      Dr. Perdue originally filed his Complaint in the State Court of Fulton
County on Dec. 19, 2014.  Defendants removed the case to this Court on February
6, 2015 on the basis that the claims involve federal questions governed by ERISA.
[ECF No. 1.]  Defendants moved to dismiss Dr. Perdue's claims on February 13,
2015 [ECF No. 3] and Dr. Perdue filed an Amended Complaint on March 2, 2015
[ECF No. 6].

his monthly retirement benefit.  Am. Compl. ¶¶ 34-44.  In Count Two, Dr. Perdue

asserts that Defendants breached fiduciary duties to Dr. Perdue arising out of an

alleged confidential relationship.  *Id.* ¶¶ 45-52.  Count Three alleges a claim for

equitable relief under the theory that oral promises permit the Court to reform the

1997 Benefits Plan.  *Id.* ¶¶ 53-62.  Finally, Count Four of the Amended Complaint

seeks attorneys' fees pursuant to O.C.G.A. § 13-6-11 and ERISA Section 502(g).

*Id.* ¶¶ 63-64.

## ARGUMENT AND CITATION TO AUTHORITIES

### A.   Legal Standard for a Motion to Dismiss.

A complaint should be dismissed, pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, if it fails to "state a claim to relief that is plausible on its

face."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  While well-pleaded facts are

accepted as true at the motion to dismiss stage, "where the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'shown' – that the pleader is entitled to

relief." *Id.*, at 679. "[C]onclusory allegations, unwarranted deductions of facts or

legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset

Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).  In addition, where

there are dispositive issues of law, a court may dismiss a claim regardless of the

US2008 6461955 1

alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

**B.     The 1997 Benefits Plan Is a "Top Hat" Plan Under ERISA.**

As a preliminary matter, it is important for the Court to recognize that the 1997 Benefits Plan is a "top hat" plan under ERISA.  "A top hat plan is a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006) (citations omitted).  While "[t]op hat plans are subject to ERISA, 29 U.S.C. § 1003(a), [] notably, they are excluded from many individual ERISA provisions on the basic assumption that high-level employees are in a 'strong bargaining position relative to their employers and thus do not require the same substantive protections that are necessary for other employees.'"  *Id.*

While the Eleventh Circuit does not appear to have established a test for determining whether an ERISA plan is "funded" or "unfunded," a test utilized by the Second Circuit is particularly applicable in this case.  In *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000), the Second Circuit adopted the test applied in *Miller v. Heller*, 915 F. Supp. 651 (S.D.N.Y. 1996).  Under that standard,

- 9 -

> the question a court must ask in determining whether a plan is unfunded is: "can the beneficiary establish, *through the plan documents*, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation?"

*Demery*, 216 F.3d at 287 (emphasis added).

Here, the 1997 Benefits Plan was "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," *Holloman*, 443 F.3d at 837, because, at the time, Dr. Perdue was the former Acting President of Morehouse College, Am. Compl. ¶ 11, and he is the only beneficiary to the plan, Ex. A.  Additionally, the 1997 Benefits Plan is an "unfunded" plan because there is no mention in the plan documents of a "specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation."  *Compare* Ex. A with *Demery*, 216 F.3d at 287.  As a result, the pleaded allegations of the Amended Complaint clearly show that the 1997 Benefits Plan meets all of the requirements of a top hat plan under ERISA.

**C.    Dr. Perdue's Claims for Monetary Relief Arising from Anticipatory Repudiation and Breach of Contract Fail as a Matter of Law Under the Unambiguous Terms of the 1997 Benefits Plan.**

Count One for monetary relief alleges that Morehouse anticipatorily breached the 1997 Benefits Plan when it "indicated that the College will cease

paying Dr. Perdue's monthly benefit." Am. Compl. ¶ 35. Additionally, Dr. Perdue alleges that Morehouse breached the 1997 Benefits Plan by allegedly changing the beneficiary of the 1997 life insurance policy. *See id.* ¶ 40. Both claims fail as a matter of law because there have been no breaches.

The annual review provisions in the 1997 Benefits Plan expressly provide that the Board will have discretion each year to determine whether to continue Dr. Perdue's monthly compensation benefits and life insurance benefits and, if the Board decides to continue the benefits, the amount of the monthly payments and life insurance benefits. *See* Ex. A. Specifically, paragraph 1 states:

> Morehouse College's Board of Trustees as of January 1, 1998 and as of the first day of each calendar year thereafter shall decide (1) whether to continue to pay Dr. Perdue a monthly deferred compensation benefit for the remainder of each such calendar year or through the month in such calendar year in which Dr. Perdue dies, whichever comes first, subject to any required tax withholding and (2) the amount, if any, of such monthly deferred compensation benefit for such calendar year.

Ex. A ¶ 1; *see also* Compl. ¶ 21. Likewise paragraph 5 states:

> Morehouse College's Board of Trustees as of January 1, 1998 and as of the first day of each calendar year thereafter shall decide (1) whether to continue to pay the premiums on a life insurance policy on Dr. Perdue's life for such calendar year and (2) the amount, if any, payable at Dr. Perdue's death to his beneficiary under such policy.

Ex. A at ¶ 5.

US2008 6461955 1

In interpreting the terms of an ERISA plan, the Court must interpret and enforce unambiguous language according to its plain meaning.  *See Johnson Controls, Inc. v. Flaherty*, 408 F. App'x 312, 313 (11th Cir. 2011) ("Where the terms of an ERISA plan are clear and unambiguous – as they are here – we must enforce them as written").[6]  Here, Morehouse simply exercised its rights under the 1997 Benefits Plan to cease paying Dr. Perdue a monthly compensation benefit and providing Dr. Perdue's life insurance benefits.[7]  *See* Ex. A ¶ 1, 5; Am. Compl. ¶¶ 30-32.  As the 1997 Benefits Plan clearly and unambiguously stated that Morehouse could take these actions, no breaches occurred, and Morehouse has not repudiated any obligation by performing under the contract pursuant to its terms.

Indeed, Dr. Perdue acknowledges that the 1997 Benefits Plan provided this right and that in 1997, he recognized the risk inherent to him from such right: "Dr. Perdue expressed his unwillingness to agree to the annual review provision, fearing it would give the Board of Trustees discretion to terminate his benefits at a future

---

[6]     *See also Ward v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 643 F.3d 1331, 1334 (11th Cir. 2011) (upholding judgment on the pleadings because the plaintiff was not entitled to relief under the unambiguous terms of the ERISA plan); *Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1239 (11th Cir. 2010).

[7]     By the plain terms of the 1997 Benefits Plan, Morehouse could "decide . . . the amount, if any, payable at Dr. Perdue's death to his beneficiary under such policy."  Ex. A at ¶ 5.  Morehouse's ability to decide to pay Dr. Perdue's beneficiary zero effectively permitted Morehouse to change the beneficiary on the insurance policy.

date." Am. Compl. ¶ 23. Dr. Perdue cannot argue that anything about the terms of the annual review provision was unclear or ambiguous.

In addition, to the extent that Dr. Perdue claims the 1997 Benefits Plan was modified by oral representations made to him regarding the annual review provision, his argument fails as a matter of law. The 1997 Benefits Plan includes an integration clause, which clearly states that the 1997 Benefits Plan "represents the full and complete understanding and agreement between Dr. Perdue and Morehouse College with respect to Dr. Perdue's deferred compensation package and supersedes and revokes all other understandings and agreements with respect to such package . . . ." Ex. A at 2. Additionally, the 1997 Benefits Plan could "be amended only through a written agreement signed by Dr. Perdue and the Chairman of the Board of Trustees of Morehouse College, which written agreement must expressly identify the [1997 Benefits Plan] provisions it is amending." *Id.* Under the plain terms of the 1997 Benefits Plan, oral representations made either before or after Dr. Perdue agreed to the plan cannot alter or amend the plan's terms.

Dr. Perdue argued in his opposition to Defendant's first motion to dismiss that a top hat plan can be partially in writing and partially oral, relying on *In re New Valley Corp.*, 89 F.3d 143 (3d Cir. 1996). [ECF No. 5 at 11 &13]. *New Valley* is easily distinguishable and Dr. Perdue's argument that the 1997 Benefits

US2008 6461955 1

Plan can be partially oral fails.  In *New Valley*, a key detail that led the court, after

considerable discussion, to determine that the terms of the top hat plan could be

partially in writing and partially based on oral statements, was that the plan lacked

an integration clause.  89 F.3d at 147 ("none of the versions of the plan contained

an integration clause").  The court held, however, that top hat plans "may, of

course, be integrated by their own terms, just as they may contain any provision to

which the parties agree."  *Id.* at 149.[8]

Courts applying the *New Valley* decision to cases involving circumstances

similar to those in this case have excluded consideration of oral representations

when an integration clause was present.  In *In re IT Group, Inc.*, 305 B.R. 402, 412

(Del. Bankr. 2004), *aff'd* 448 F.3d 661 (3d Cir. 2006), the plaintiffs argued that the

"lack of a writing requirement in 'top hat' plans means that the Deferred

---

[8]     Additionally, the Third Circuit applies a different test in determining
whether to consider extrinsic evidence.  In *New Valley*, the court apparently
considered extrinsic evidence to determine whether the plan was ambiguous.  89
F.3d at 150.  In the Eleventh Circuit, "[a]bsent an ambiguity, however, the
consideration of extrinsic evidence is not proper."   *Wile v. Paul Revere Life Ins.
Co.*, 410 F. Supp. 2d 1313, 1316 (N.D. Ga. 2005) (holding that extrinsic evidence
could not be admitted to interpret terms in an ERISA plan because the court had
determined, based upon the language in the ERISA plan, that the terms were
unambiguous); *see also Holloman v. Mail-Well Corp.*, 443 F.3d 832, 839 (11th
Cir. 2006).  There is no ambiguity in the terms of the 1997 Benefits Plan and Dr.
Perdue has not alleged or argued that any term is ambiguous.

Compensation Plan cannot be integrated and that oral modifications must be considered," but the court did not agree.  Instead, the court stated:

> No case law supports this creative argument. That a "top hat" plan may be partially or totally oral does not support the proposition that it cannot be written and merged. The case law suggests only that portions of a "top hat" plan "can" be oral, not that every oral representation "must" be included in the Plan.

*Id.* (citing *New Valley*).  Similarly, in *Straney v. Gen. Motors Corp.*, No. 06-cv-12152, 2008 WL 162554, at *3 n.3 (E.D. Mich. Jan. 16, 2008), the court noted that although "oral representations are sometimes effective to alter the terms of a plan" (citing *New Valley*), **"[e]ven in the case of a top-hat plan, courts must give effect to the unambiguous language of the plan documents. . . .  Where the plan documents unambiguously forbid oral modification, . . . the Court must give that language effect."**  (Emphasis added).

Courts applying the clear language of *New Valley* have held that Dr. Perdue's argument must fail as a matter of law.  Here, unlike the plan at issue in *New Valley*, the 1997 Benefits Plan includes an integration clause.  *See* Ex. A at 2. The Court must give the written agreement effect, enforce the integration clause, and disregard the oral representations Rev. Moss allegedly made to Dr. Perdue before he agreed to the 1997 Benefits Plan.  The 1997 Benefits Plan, by its own terms and applicable law, cannot be modified by oral representations.

Because there was no repudiation or breach by Defendants, Dr. Perdue's claims for monetary relief allegedly arising from anticipatory repudiation and breach of contract fail as a matter of law.  Accordingly, those claims should be dismissed because Dr. Perdue will not be entitled to relief under any state of provable facts or admissible evidence.  *See Iqbal*, 556 U.S. at 679.

**D.    Dr. Perdue's Claim for Breach of Fiduciary Duty Is Barred by ERISA.**

Count Two, breach of duties arising from a confidential relationship, alleges that Morehouse breached its fiduciary obligations to Dr. Perdue in connection with the 1997 Benefits Plan.  *See* Am. Compl. ¶¶ 45-52.  However, because the 1997 Benefits Plan is a "top hat plan," Dr. Perdue's claim sounding in breach of fiduciary duty is barred because there is no cause of action sounding in breach of fiduciary obligations related to top hat plans.

It is well established that there is no cause of action sounding in breach of fiduciary obligations arising out of a top hat plan.  *See Holloman*, 443 F.3d at 842; *see also Goldstein v. Johnson & Johnson,* 251 F.3d 433, 443 (3d Cir. 2001) ("To begin with, ERISA explicitly states that top hat plans are not subject to ERISA's fiduciary requirements. Further, it is well established in the case law that there is no cause of action for breach of fiduciary duty involving a top hat plan.") (citations omitted).  Thus, because the 1997 Benefits Plan upon which Dr. Perdue's breach of

- 16 -

confidential relationship claim is predicated is a top hat plan, that claim is barred and fails as a matter of law.

Additionally, Dr. Perdue does not have a valid claim for breach of fiduciary duty arising outside of ERISA. In determining whether a legal duty is entirely independent of an ERISA plan, the analysis rests on whether the alleged liability is derived from or dependent upon the existence and administration of an ERISA regulated benefit plan. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004). Stated differently, if "interpretation of the terms of [a plaintiff's] benefit plan[] forms an essential part of [the] claim, . . . liability would exist [] only because of [the defendant's] administration of ERISA-regulated benefit plans . . . [and] [the defendant's] potential liability . . . derives entirely from the particular rights and obligations established by the benefit plans." *Id.* For Dr. Perdue's claim for breach of a confidential relationship pertaining to actions involving the 1997 Benefits Plan, the "legal duty implicated is dependent upon an ERISA plan." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1288 (11th Cir. 2011) (holding that claims for breach of fiduciary obligations that arise from the relationship established by the benefits plan and the defendant's duties under ERISA satisfy the second prong of *Davila*); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987) (holding

US2008 6461955 1

that state law claims, including breach of fiduciary duty, are preempted by 29

U.S.C. § 1144(a)).

Dr. Perdue suggests that he also has claims for breach of duty arising from

actions that occurred in 1996 and 1997 in connection with his entering into the

1996 Retirement Letter and the 1997 Benefits Plan.  Am. Compl. ¶¶ 49-50.  It is

not necessary to determine whether those claims would arise independently of

ERISA because they are barred by the statute of limitations in any event.  Under

Georgia law, a claim for breach of fiduciary duty must be asserted within six

years.[9]  *See Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 386-87

(2007) (claim for breach of fiduciary duty is barred whether four year or six year

limitations period applies).  Here, it has been over sixteen years since the alleged

breach of duty took place (in 1996 and 1997, at the latest), and therefore any

claims arising from those actions are barred by the statute of limitations.

---

[9]     To determine the statute of limitations for an ERISA claim where Congress
has not established a limitation period, the district court "must define the essential
nature of the ERISA action and apply the forum state's statute of limitations for the
most closely analogous action."  *Blue Cross & Blue Shield of Ala. v. Sanders*, 138
F.3d 1347, 1356 (11th Cir. 1998).

US2008 6461955 1

**E.     Dr. Perdue's Claim for Equitable Relief Fails Because the Terms of the 1997 Benefits Plan Are Clear That Such Relief Is Not Available.**

In Count Three, Dr. Perdue seeks equitable relief, but ERISA permits equitable relief only in narrow circumstances not present here.  29 U.S.C. § 1132(a) provides that a civil action may be brought

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan . . . .

29 U.S.C. § 1132(a).  Therefore, a claim for equitable relief can only be brought to "redress" violations of ERISA or to enforce the terms of the 1997 Benefits Plan. *See Green v. Holland*, 480 F.3d 1216, 1224 (11th Cir. 2007) ("under the plain language of § 502(a)(3), the relief sought must be equitable in nature, and the claim for relief must be predicated on either a violation of ERISA or the enforcement of a plan provision or an ERISA provision").  Dr. Perdue's claim for equitable relief fails because the terms of the 1997 Benefits Plan do not entitle him to the relief that he seeks.

As discussed above, Dr. Perdue is not entitled to rely on any alleged oral representations that were made to him outside of the written terms of the 1997 Benefits Plan.  The clear integration clause of the 1997 Benefits Agreement, along

- 19 -

with the requirement that any change be made in a writing signed by both Dr.

Perdue and Morehouse, *see* Ex. A at 2, causes Dr. Perdue's purported reliance on

alleged oral comments to be wholly unsupportable as a matter of law.  No alleged

oral assertions can be cited as a basis to modify or reform the 1997 Benefits Plan.

Dr. Perdue's claim for equitable relief fails as a matter of law and should be

dismissed.

## CONCLUSION

For the foregoing reasons, all of Dr. Perdue's claims fail as a matter of law.[10]

Accordingly, Morehouse respectfully requests the Court dismiss Dr. Perdue's

Amended Complaint in its entirety with prejudice.

Respectfully submitted March 19, 2015.

|  |  |
|---|---|
|  | s/ Michael W. Tyler |
| KILPATRICK TOWNSEND & STOCKTON LLP | Michael W. Tyler Georgia Bar No. 721152 |
| 1100 Peachtree Street, Suite 2800 | Robert E. Buckley |
| Atlanta, Georgia 30309-4530 | Georgia Bar No. 140280 |
| (404) 815-6500 |  |
| Fax:  (404) 815-6555 |  |
| mtyler@kilpatricktownsend.com |  |
| robuckley@kilpatricktownsend.com | Counsel for Defendants |

---

[10]     Count Four for attorneys' fees is contingent upon Dr. Perdue's other claims and must also fail if the Court dismisses all of the other claims asserted in the Amended Complaint.

US2008 6461955 1

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

I hereby certify that the foregoing was prepared in Times New Roman font, 14 point type, in compliance with Local Rule 5.1(C).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing DEFENDANTS' BRIEF IN SUPPORT OF SECOND MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to the following attorneys of record:

|  |  |
|---|---|
| Leighton Moore | leighton@moorefirmpc.com |
| Darren Summerville | darren@summervillefirm.com |
| Angela Fox | angie@summervillefirm.com |

Dated:  March 19, 2015.

                                       s/ Michael W. Tyler
KILPATRICK TOWNSEND           Michael W. Tyler
  & STOCKTON LLP               Georgia Bar No. 721152
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555            Counsel for Defendants